IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


JOYCE M. SMITH                                                                                    PLAINTIFF

vs.                                       Civil No. 6:07-cv-06036

MICHAEL J. ASTRUE                                                                              DEFENDANT
Commissioner, Social Security Administration


**MEMORANDUM OPINION**

      Joyce M. Smith ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

      Plaintiff filed an application for DIB on July 19, 2004.  (Tr. 54-56).  In this application and in the supporting documents filed with the SSA, Plaintiff alleges she is disabled due to her neck pain and "degenerative arthritis of spine; osteoporosis; spondylosis of the cervical spine and mild cervical canal stenosis–I had cervical fusion."  (Tr. 111).  Plaintiff also alleges she suffers from hypertension

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

1

and asthma.[2] (Tr. 223). Plaintiff alleges an onset date of May 17, 2004. (Tr. 54). She alleges that on that date, she was struck in the head by a kick ball while working at a school. (Tr. 232-233). This application was initially denied on September 13, 2004 and was denied again on reconsideration on January 14, 2005. (Tr. 31-34).

On February 2, 2005, Plaintiff requested a hearing on her application. (Tr. 45). This hearing was held on January 24, 2006 in Hot Springs, Arkansas. (Tr. 225-248). Plaintiff was present and was represented by counsel, Linn Reed, at this hearing. *See id.* Only Plaintiff and Plaintiff's husband Joe Smith testified at this hearing. *See id.* Vocational Expert ("VE") Dwight Turner appeared by phone but did not testify at this administrative hearing. *See id.* On the date of this hearing, Plaintiff was forty-five (45) years old, which is defined as a "younger individual" under 20 C.F.R. § 404.1563, and had an eleventh grade education. (Tr. 22, Findings 6-7; 225-248).

On August 18, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB. (Tr. 13-23). In this decision, the ALJ determined Plaintiff had met the insured status requirements of the Act on May 17, 2004, the alleged onset date of her disability, and would continue to meet them through December 31, 2007. (Tr. 21, Finding 1). The ALJ determined that there was no evidence that Plaintiff had engaged in any Substantial Gainful Activity ("SGA") since the alleged onset date of her disability. (Tr. 21, Finding 2).

The ALJ determined that the medical evidence of record established that Plaintiff had a

---

[2] In her appeal brief, Plaintiff claims she suffers from other impairments as well. (Doc. No. 7, Pages 2-3). Plaintiff provided references to her medical records in support of her claim that she suffers from these impairments. *See id.* Plaintiff, however, has not cited to either her application or to the statements made at her January 24, 2006 hearing to support these claimed impairments. The ALJ is only under an obligation to investigate the impairments raised in either the application or at the administrative hearing. *See Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996) (holding that "the administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (quoting *Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir. 1993)). Because Plaintiff has not demonstrated that she raised these impairments in either her application or at the hearing, this Court will not address these claimed impairments.

history of diagnoses of, and treatment for, "degenerative disc disease of the cervical spine with spondylosis status post anterior cervical diskectomy with fusion at C4-5; hypertension; and asthma." (Tr. 21, Finding 3). The ALJ found these impairments were considered "severe" within the meaning of the Act since they had more than a minimal impact on Plaintiff's ability to perform certain basic work-related activities. (Tr. 21, Finding 3). The ALJ, however, also found that Plaintiff did not have an impairment or a combination of impairments that met, were medically equivalent to, or were functionally equivalent to the requisite level of severity of an impairment contained in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulation No. 4 ("Listings"). (Tr. 24, Finding 3).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 16-22). Plaintiff claimed her impairments caused her constant pain, caused her to take frequent breaks from sitting (breaks every 15-20 minutes), caused her to be unable to stand for more than 15 minutes, caused her to only be able to walk three-fourths of a mile, and caused her to be able to only lift 10 pounds. (Tr. 242-244). The ALJ evaluated these subjective complaints and allegedly disabling symptoms based upon the factors in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and discounted these subjective complaints. (Tr. 17-20; 21, Finding 4).

Specifically, the ALJ discounted Plaintiff's subjective complaints based upon the following findings: (1) Plaintiff's claims of severe restrictions on her activities of daily living were not supported by the medical evidence in the record as a whole, and those restrictions appeared to be entirely self-imposed; (2) Plaintiff's medical records did not support her claims of severe restrictions on her ability to lift, sit, stand, and walk; and (3) Plaintiff's claims of severe and debilitating pain

3

were not supported by her medical records, which indicate that she did not seek consistent pain treatment for a period of at least 12 months. (Tr. 17-18).

After discounting Plaintiff's subjective complaints of disabling pain, the ALJ determined Plaintiff's RFC. (Tr. 18-19). Specifically, the ALJ determined Plaintiff retained the following RFC:

> She can lift and/or carry up to 20 pounds occasionally and can lift and/or carry up to 10 pounds frequently. She is capable of sitting, with normal breaks, for a total of about 6 hours in an 8-hour workday and is further capable of standing and/or walking, with normal breaks, for a total of at least 2 hours in an 8-hour workday (20 CFR §§ 404.1545 and 416.945). She does not have any other medically-documented additional postural limitations, manipulative limitations, visual limitations, communicative limitations, environmental limitations or mental restrictions which could be expected to significantly further reduce her residual functional capacity.

(Tr. 19; 21, Finding 5).

The ALJ then determined that Plaintiff was unable to perform any of her Past Relevant Work ("PRW") but was able to perform work existing in significant numbers in the national economy. (Tr. 22, Findings 8-12). Plaintiff testified at the administrative hearing regarding her PRW. (Tr. 228-233). Plaintiff testified that her PRW included work as a factory sewing machine operator, dietary/food server, certified nurse's assistant, and school bus monitor/driver. (Tr. 22, Finding 8). The ALJ found that Plaintiff was no longer able to perform any of her vocationally relevant PRW because the exertional demands of that work would exceed her current RFC. (Tr. 22, Finding 9). The ALJ also found that the transferability of Plaintiff's acquired work skills was not material to his decision due to the claimant's younger age and her RFC. (Tr. 22, Finding 10).

The ALJ did not present any hypothetical questions to the VE regarding Plaintiff's ability to perform other work in the national economy. Instead, the ALJ used the Medical-Vocational Guidelines ("the Grids") to determine whether Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (Tr. 22, Finding 11). By using these Grids, the ALJ

4

identified approximately 1,600 separate and different unskilled, entry-level sedentary and light exertional level occupations in eight broad occupational categories that Plaintiff could perform considering her age, education, previous work experience, and RFC. (Tr. 22, Finding 11). The ALJ noted that those jobs identified could "be performed after a short demonstration or within 30 days and . . . [did] . . . not required any special skills or past experience." *See id.* The ALJ also noted that Plaintiff's "occupational potential therefore remains significant, especially in view of her younger age." *See id.* Based upon this finding, the ALJ determined Plaintiff was capable of performing a significant number of jobs in the economy and was, therefore, not disabled. (Tr. 22, Finding 12).

On October 20, 2006, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 9). On March 30, 2007, the Appeals Council declined to review the ALJ's decision. (Tr. 5-7). On May 9, 2007, Plaintiff filed the present action. (Doc. No. 1). The parties consented to the jurisdiction of this Court on June 7, 2007. (Doc. No. 4). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can

perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### 3. Discussion:

Plaintiff brings the present appeal claiming the following: (A) the ALJ erred in failing to follow the criteria for evaluating Plaintiff's disability in accordance with the Listings 1.00 *et seq.*, 9.00 *et seq.*, 11.00 *et seq.*, and 12.00 *et seq.*; (B) the ALJ erred by failing to give substantial weight to the testimony of Plaintiff's treating physician, Dr. Brashears; and (C) the ALJ erred in assessing Plaintiff's RFC without proper consideration of Plaintiff's allegation of chronic pain as a non-exertional limitation. (Doc. No. 7, Pages 1-19). In response, Defendant argues that Plaintiff did not carry her burden of demonstrating that she satisfied any of the Listings. (Tr. 8, Pages 4-8). Defendant argues that the ALJ properly rejected the unsupported opinion of Plaintiff's treating physician. *See id.* at 8-10. Defendant also argues that the ALJ properly considered Plaintiff's subjective complaints of pain and that substantial evidence supports the ALJ's RFC determination that Plaintiff could perform a wide range of light work. *See id.* at 10-16. Each of these three arguments will be addressed in this opinion.

#### A. ALJ's Evaluation of the Listed Impairments

Plaintiff argues in one of the headers in her briefing that she is disabled because she meets the requirements of Listings 1.00*et seq.*, 9.00 *et seq.*, 11.00 *et seq.*, and 12.00 *et seq.* (Doc. No. 7, Page 8). Plaintiff, however, only substantively argues in her briefing that she meets the requirements of Listings 1.03, 1.04, and 1.05. *See id.* at 8-11. In his briefing, Defendant argues that Listings 9.00 *et seq.* (Endocrine System Disorders), 11.00 *et seq.* (Neurological Disorders), and 12.00 *et seq.*

(Mental Disorders) were only raised in one of the headers of Plaintiff's briefing, were not addressed as a substantive argument in Plaintiff's briefing, are not at issue in this case, and should not be evaluated in this opinion. (Doc. No. 8, Page 4).

This Court agrees with Defendant's argument. Because Plaintiff only properly raised Listings 1.00 *et seq.* in her briefing, only these Listings will be evaluated. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" the plaintiff's contention that the ALJ failed to consider whether he met Listings 12.02 or 12.05C because the plaintiff provided "no analysis of the relevant law or facts regarding these listings"). Specifically, in her briefing, Plaintiff claims that she meets the requirements of Listing 1.02 ("Major dysfunction of a joint(s)"), Listing 1.03 ("Reconstructive surgery or surgical arthrodesis[3] of a major weight-bearing joint"), Listing 1.04 ("Disorders of the spine"); and Listing 1.05 ("Amputation (due to any cause)").[4] (Doc. No. 7, Pages 8-11).

First, with Listing 1.02, Plaintiff must establish that she suffers from a "major dysfunction of a joint(s)" caused by a "gross anatomical deformity." Plaintiff claims her medical records support her claim that she suffers from such a deformity. (Doc. No. 7, Page 11). However, none of her medical records establish that she has any "gross anatomical deformity," and Plaintiff offers no other evidence to support her claim that she suffers from any such deformity. Plaintiff has the burden of establishing that she meets the requirements of the Listings. *See Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004) (noting that the plaintiff has the burden of proof of establishing that his

---

[3] "Arthrodesis" is defined as "The stiffening of a joint by operative means." *PDR Medical Dictionary* 160 (3rd ed. 2006).

[4] As noted by Defendant, Plaintiff misstates the requirements of these Listings. (Doc. No. 8, Page 4 n. 3). For purposes of this opinion, it is assumed that Plaintiff meant to refer to the *current* law or the *current standards* for Listings 1.02 through 1.05.

8

or her impairment meets or equals a Listing). Because Plaintiff has not established that she suffers from such a deformity, she cannot establish that she meets the requirements of Listing 1.02.

Second, with Listing 1.03, Plaintiff must establish she has an inability to ambulate effectively due to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. Plaintiff has not demonstrated, and her medical records do not establish, that Plaintiff had any *reconstructive surgery or surgical arthrodesis* of any of her joints. Plaintiff's medical records only establish that she had neck surgery on May 25-26, 2004 that resulted in Plaintiff suffering from no significant permanent physical abnormalities.[5] (Tr. 123-127). Furthermore, Plaintiff has not established that she is limited in her ability to walk or "ambulate effectively" due to such a surgery or surgical arthrodesis. Because Plaintiff has not met her burden of establishing she meets the requirements of Listing 1.03, she cannot be found disabled on the basis of this Listing. *See Johnson,* 390 F.3d at 1070.

Third, with Listing 1.04, Plaintiff must establish that she suffers from a serious disorder of the spine *resulting in compromise of a nerve root or the spinal cord*. Plaintiff has provided no evidence or medical records establishing she has a spinal problem that has resulted in a compromise of a nerve root or the spinal cord. In fact, Plaintiff's medical records demonstrate that she has no problems. (Tr. 130). Specifically, after Plaintiff's cervical fusion on June 25, 2004, her x-ray reports demonstrated "satisfactory alignment and position" and there was no notation of nerve root compression. (Tr. 130). A subsequent MRI in October of 2004 of Plaintiff's cervical spine also revealed no such compression. (Tr. 141-142). Plaintiff's medical records also establish that

---

[5] Plaintiff's only limitation on physical activity as a result of this surgery was that she was required to wear "a soft cervical collar for 6 weeks' time" and was required to see her physician for a follow-up appointment in six weeks. (Tr. 123-124).

Plaintiff's condition improved after undergoing the cervical fusion and a course of therapy from September 14, 2004 through December 31, 2004. (Tr. 155-159). Because Plaintiff has not met her burden of establishing she meets the requirements of Listing 1.04, she cannot be found disabled on the basis of this Listing. *See id.*

Fourth and finally, with Listing 1.05, Plaintiff must establish, at a minimum, that she has had a *limb amputated*. Plaintiff has not alleged, and her medical records provide no basis for concluding that, Plaintiff has had a limb amputated. Accordingly, because Plaintiff has not met her burden of establishing she meets the requirements of Listing 1.05, she cannot be found disabled on the basis of this Listing. *See id.*

**B. Opinion of Plaintiff's Treating Physician**

Plaintiff also claims the ALJ erred in this case by failing to give "substantial weight" to the testimony of Plaintiff's treating physician regarding her disability. (Doc. No. 7, Pages 12-15). Plaintiff claims the record establishes Plaintiff is disabled and that the ALJ improperly disregarded the opinions of Plaintiff's treating physicians without any explanation. *See id.* at 13-14. Plaintiff specifically argues that the opinion of Dr. L.B. Brashears, M.D., finding Plaintiff would be disabled "forever," should be given substantial or controlling weight. *See id.* In response, Defendant argues that Dr. Brashears's opinion regarding Plaintiff's "disabling" neck pain is inconsistent with the record as a whole. (Doc. No. 8, Pages 8-10). Defendant also argues that Dr. Brashears's opinion is not entitled to substantial or controlling weight because it appears to be based almost entirely upon an uncritical acceptance of Plaintiff's subjective complaints. *See id.*

According to the Social Security Regulations ("Regulations"), opinions from treating physicians are given "more weight" than non-treating physicians because those physicians "are likely

10

to be the medical professionals most able to provide a detailed, longitudinal picture of your [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). SSA will give "controlling weight" to a treating sources opinion if that opinion of the nature and severity of the claimant's imparment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and "is not inconsistent with the other substantial evidence in your [the claimant's] case record." *See id.*

However, if the treating physician's opinion is not well-supported by the evidence in the record, then that treating physician's opinion may not be entitled to controlling weight. *Charles v. Barnhart,* 375 F.3d 777, 783 (8th Cir. 2004) (citations omitted); *Hamilton v. Astrue,* 2008 WL 623609, at *1 (8th Cir. March 10, 2008) (citation omitted) (conclusory statements or opinions by a treating physician are not entitled to controlling weight). Furthermore, a treating physician's opinion that a claimant is disabled or cannot be gainfully employed is entitled to no deference because it invades the province of the Commissioner to make the ultimate disability determination. *See House v. Astrue,* 500 F.3d 741, 744-45 (8th Cir. 2007); Social Security Ruling 96-5p ("Medical Source Opinions on Issues Reserved for the Commissioner").

In the present action, Dr. Brashears's opinion is not entitled to controlling weight because it is not supported by substantial evidence in the record. On October 1, 2004, Dr. Brashears wrote on a prescription sheet, "This pt. will not be able to do any work at all due to disabling neck condition for an indefinite period of time." (Tr. 143). On October 9, 2006, Dr. Brashears also wrote an "opinion letter" regarding Plaintiff's condition which provides in relevant part as follows:

> I am writing this letter on behalf of Joyce Smith. I have followed this patient for quite sometime for various problems, *one of which is persistent neck pain*. She has had abnormal MRIs and severe clinical symptoms that two neurosurgeons have recognized and performed surgery in efforts to lessen her pain. She has continued to have pain and disability of her neck being unable to work for two and one half

11

>years. My observations and comments are based on her medical records that I compiled, clinical symptoms, physical findings, and my own personal knowledge. Ms. Smith has neck pain daily that prevents her from working or even doing her household chores. This has put great stress on her family life and her husband in that he must perform most of her work at home and his own job duties. When an experienced physician reviews her personal history and examines her, they will realize the scope of her pain and it becomes obvious *she is totally disabled to work forever.*

(Tr. 221) (emphasis added). Dr. Brashears also completed a "Physical Residual Functional Capacity Questionnaire" on October 22, 2004 indicating Plaintiff was severely limited in her ability to work due to her neck pain. (Tr. 171-174).

Plaintiff's medical records, however, demonstrate that she was not so limited and was certainly not disabled "forever." In June of 2004, after Plaintiff's neck pain caused her to stop working in May of 2004 (Tr. 232-233), Dr. Ronald N. Williams, M.D. performed a cervical fusion on Plaintiff's intervertebral disc at C4-5. (Tr. 123-130). Upon discharge, there was no apparent immediate concern from Dr. Williams about Plaintiff's condition because he merely provided her some additional pain medication and instructed her to return for a follow-up appointment in six weeks. (Tr. 124, 147).

With the aid of conservative treatment, such as physical therapy from September of 2004 until December of 2004, Plaintiff reported a decrease in her symptoms and her range of motion increased. (Tr. 16, 177-219). Repeatedly, Plaintiff's physical therapist observed Plaintiff "to be progressing well with treatment" and her ranges of motion increased with exercise and therapy. (Tr. 200). After just one month of therapy, Plaintiff reported only mild to moderate limitations in her ability to reach, drive, or groom, and her ranges of motion increased in every major region tested.[6]

---

[6] Plaintiff's claim that she tried "PT for many weeks with no success" is incorrect. (Doc. No. 7, Page 7). Plaintiff's treatment records indicate that she improved significantly after physical therapy. (Tr. 177-219).

(Tr. 200).

During this physical therapy, Plaintiff also did not report that she took any medication for her allegedly disabling pain. (Tr. 177-219). Similarly, progress notes from Dr. Brashears from March of 2005 through November of 2005 reveal that Plaintiff was not prescribed pain medication.[7] (Tr. 220). Rather, Plaintiff was merely provided an inhaler to treat an asthma attacks, Diovan,[8] and Skelaxin.[9] (Tr. 220). If Plaintiff were truly experiencing disabling pain that would disable her "forever," Dr. Brashears would have prescribed Plaintiff a prescription pain reliever. *See Curran-Kicksey v. Barnhart,* 315 F.3d 964, 969 (8th Cir. 2003) (finding it appropriate to doubt a claimant's subjective complaints of pain when that claimant did not regularly require prescription pain medication); *Cruse v. Bowen,* 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that the claimant's allegations of disabling pain were inconsistent with her minimal consumption of pain medication).

Additionally, upon discharge from her physical therapy, Plaintiff's physical therapist observed that Plaintiff's initial goals were partially achieved and no further care was anticipated. (Tr. 177). The ALJ also observed that at Plaintiff's most recent visit to Dr. Brashears in November of 2005, her neck pain was due to how she positioned her neck, not as a result of exercise or therapy. (Tr. 17, 200). Furthermore, on November 3, 2004, Plaintiff's physician, Dr. Williams noted that Plaintiff's "range of motion in the neck is mildly if at all restricted." (Tr. 175).

The ALJ properly evaluated the opinion of Dr. Brashears regarding Plaintiff's limitations, discounting the opinion that she was "forever" disabled because his opinion was contradicted by, or

---

[7] Plaintiff claims that as a result of her chronic pain, "she is on a multitude of muscle relaxers and pain medications." (Doc. No. 7, Page 15). Plaintiff, however, does not state which pain medications she is taking or has been taking and provides no support for this claim.

[8] Diovan is a high blood pressure medication. *Physicians' Desk Reference* 2207-2210 (62nd ed. 2008).

[9] Skelaxin is a muscle relaxant. *See id.* at 1752-1753.

13

was inconsistent with, other evidence in the record. *See Edwards v. Barnhardt,* 314 F.3d 964, 967 (8th Cir. 2003) (noting that if a doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight"). The ALJ's disregard of Dr. Brashears's opinion that Plaintiff will be disabled "forever" is supported by substantial evidence and is affirmed.[10]

### C. Plaintiff's Subjective Complaints of Chronic Pain

Plaintiff also claims the ALJ erred in assessing Plaintiff's RFC without consideration of Plaintiff's subjective allegations of the non-exertional limitation of chronic pain. (Doc. No. 7, Pages 15-16). Plaintiff claims her chronic pain is supported by objective medical evidence and should not have been disregarded. *See id.* In response, Defendant argues that the ALJ properly considered, and disregarded, Plaintiff's subjective complaints "in accordance with relevant Eighth Circuit case law, regulations, and Social Security Rulings." (Doc. No. 8, Pages 10-16). Defendant claims the ALJ "specifically stated reasons for discounting the credibility of Plaintiff's subjective complaints, and he properly determined that Plaintiff's allegations of total disability were not fully credible." *See id.* at 13.

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[11] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are

---

[10] Plaintiff also claims the ALJ erred by not including in his opinion his reasons for discounting the testimony of Plaintiff's treating physician, Dr. Brashears. (Doc. No. 7, Pages 13-14). The ALJ, however, extensively considered the opinion of Dr. Brashears and included his reasons for discounting this opinion in his decision. (Tr. 19). Therefore, Plaintiff's argument is entirely without merit.

[11] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny,

as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.  *See Polaski,* 739 at 1322.  The factors must be analyzed and considered in light of the claimant's subjective complaints of pain.  *See id.*  The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.  *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).  The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors.  *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998).  The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ evaluated Plaintiff's subjective complaints pursuant to the *Polaski* factors and properly considered Plaintiff's daily activities; the duration, frequency, and

---

the Eighth Circuit has not yet required the analysis of these additional factors.  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007).  Thus, this Court will not require the analysis of these additional factors in this case.

intensity of Plaintiff's alleged pain and other symptoms; the precipitating and aggravating factors of Plaintiff's pain and other limitations; the dosage, effectiveness, and side effects of Plaintiff's medication; and Plaintiff's functional restrictions. (Tr. 17-18). As noted above, based upon this review of the *Polaski* factors, the ALJ then determined Plaintiff's testimony was not credible based upon the following three inconsistencies he found: (1) Plaintiff's claims of severe restrictions on her activities of daily living were not supported by the medical evidence in the record as a whole, and those restrictions appeared to be entirely self-imposed; (2) Plaintiff's medical records did not support her claims of severe restrictions on her ability to lift, sit, stand, and walk; and (3) Plaintiff's claims of severe and debilitating pain were not supported by her medical records, which indicate that she did not seek consistent pain treatment for a period of at least 12 months. *See id.*

Because the ALJ evaluated Plaintiff's subjective complaints pursuant to the *Polaski* factors and because the ALJ discounted Plaintiff's subjective complaints for legally-sufficient reasons (as outlined above), this Court must give deference to the ALJ's credibility determination.[12] *See Lowe,* 226 F.3d at 971-72; *Casey v. Astrue,* 503 F.3d 687, 696 (8th Cir. 2007) (holding "[i]f an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination") (quoting *Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003)).

---

[12] This Court finds it important to note that Plaintiff *did not* raise the issue of whether the ALJ properly applied the Grids in this case, even though Plaintiff claimed to suffer from the non-exertional limitation of chronic pain. *See Gray v. Apfel,* 192 F.3d 799, 802-03 (8th Cir. 1999) (holding that "when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability"). Because Plaintiff did not properly raise and brief this issue, this Court will not address this issue in this opinion. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (rejecting the plaintiff's argument out-of-hand because it did not include any argument or briefing).

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 2nd Day of May, 2008.**

>   /s/   Barry A. Bryant
> HON. BARRY A. BRYANT
> U.S. MAGISTRATE JUDGE